# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**ROBERT ALLEN WILKINS**                                    **PLAINTIFF**

VS.                     No. 4:20-cv-00938 PSH

**KILOLO KIJAKAZI,**[1] **Acting Commissioner,**
   **Social Security Administration**                        **DEFENDANT**

## ORDER

Plaintiff Robert Allen Wilkins ("Wilkins") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny his claim for Supplemental Security Income ("SSI"). Wilkins contends the Administrative Law Judge ("ALJ") erred in two ways: (1) failing to evaluate the opinion of Dr. Linda Hartsfield ("Hartsfield") in accordance with regulatory criteria; and (2) failing to account for Wilkins' moderate limitation in adapting or managing himself, which resulted in a flawed residual functional capacity ("RFC") formulation. The Court finds Wilkins' first claim for relief is meritorious.

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, and is substituted for Andrew Saul as defendant. Fed. R. Civ. P. 25(d).

The relevant period to be considered is from February 9, 2018, when Wilkins filed for benefits, through November 27, 2019, the date the ALJ issued his decision. During this period, Wilkins was treated at Living Hope Southeast ("Living Hope") for severe bipolar disorder and other mental impairments. Licensed psychological examiner Patrick Wells ("Wells") saw Wilkins eight times between February 21, 2018, and June 19, 2018. (Tr. 316, 319, 382, 385, 388, 391, 394, and 397). In addition, Wilkins engaged in ten individual therapy sessions with Living Hope licensed associate counselor Carissa Gill ("Gill") from August 9, 2018 through July 24, 2019. (Tr. 486-578). Wilkins was seen at Living Hope on referral from his primary care physician, Gary P. Nunn ("Nunn"). Nunn also saw Wilkins five times during the relevant period. (Tr. 340, 420, 422-424, and 426).

Near the close of the relevant period, about one month after the administrative hearing, Wilkins was sent to Hartsfield for a mental diagnostic evaluation. (Tr. 579-587). The ALJ summarized this September 9, 2019, visit:

> The claimant underwent a mental diagnostic evaluation conducted by Dr. Linda Hartsfield on September 9, 2019. The claimant stated that he had problems with voices talking to him. He acknowledged delusional thinking that others can read this thoughts and he reported that he isolates. He currently reported that he had no intention of harming himself, but he had experienced suicidal thoughts. Dr. Hartsfield reported that on a cognitive screening test, the claimant appeared to be functioning within the lower range of average intelligence. She reported that the claimant was cooperative, but his mood was depressed and his

>   affect was flat. His speech was fluent with a normal rate and volume, and his thought process was concrete, logical and goal directed. The claimant reported a history of abusing cocaine, but he reported that he had not used cocaine in twenty years. He also reported that he had not used methamphetamines in four years and that he had been clean of marijuana for four years. Dr. Hartsfield reported that the claimant found it hard to socialize with people and that being out in public might increase his paranoia. However, she noted that during the evaluation, the claimant was able to communicate in an intelligible and effective manner. She reported that the claimant was able to manage his day to day adaptive functioning. The claimant stated, however, that he did not want to get up half of the time and that he did not want to do anything. Dr. Hartsfield opined that, currently, the claimant had significant problems coping, but his ability to attend and sustain concentration on basic tasks was adequate. From the claimant's statements, Dr. Hartsfield opined that the claimant could lose his concentration when he has auditory hallucinations. She also opined that the claimant reported having more problems completing basic tasks within an acceptable timeframe.

(Tr. 18).

While the ALJ's summary quoted above could have included more information from Hartsfield,[2] it is clear that the ALJ discounted greatly Hartsfield's opinions in assessing Wilkins' RFC. The question is whether the ALJ adequately explained, under the pertinent regulations, why he did so.

---

[2] In his summary of the medical evidence, the ALJ did not mention that Hartsfield found Wilkins moderately limited in carrying out simple instructions and making judgments on simple work-related decisions, nor did he note Hartsfield found marked limitations in interacting appropriately with the public, with supervisors, with co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 583-584).

The regulations governing the consideration of medical opinions were revised for claims filed on or after March 27, 2017. Wilkins filed his claim on February 9, 2018. The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021). The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
>
> The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the

supportability and consistency of a medical opinion.[3]   The ALJ's analysis of Hartsfield's report, quoted below, falls short of what is required:

> Dr. Hartsfield's assessment is persuasive to the extent that it is consistent with the claimant's activities of daily living and not by claimant's self-report.  The claimant testified that he tried working at Subway, but he stopped due to his obesity and not his mental symptoms.  He acknowledged it had been years since he had used drugs and acknowledged obtaining his GED in school.  He alleged his weight gain was secondary to medication.  He reported that he used Facebook, takes his children to the doctor, and attends baseball games by sitting in this truck and watching the games.  On July 24, 2019, a discharge plan update from Living Hope indicated that the claimant reported feeling a lot better and records show that he has had no inpatient treatment of mental symptoms.

(Tr. 18).

Rather than a discussion of supportability and consistency, the ALJ focused on Wilkins' activities of daily living.  While daily activities might be relevant under the regulations "as any other factor that tends to support or contradict a medical opinion," it is error to discuss this optional factor and neglect the two factors, supportability and consistency, which *must* be addressed under the regulations.  20 C.F.R. 404.1520c(a),

---

[3] In *Morton v. Saul*, 2021 WL 307552, 7 (E.D. Mo. 2021), the district court judge observed with respect to the supportability factor, "an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion."  With respect to the consistency factor, he noted that "[s]tated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as whole."  *See Id.*

(c).

The ALJ did not cite the relevant regulation and did not mention supportability, much less offer an analysis of whether Hartsfield's opinion was or was not supportable. The ALJ cited one medical notation, from July 24, 2019, which may generously be construed as an attempt at demonstrating Hartsfield's opinion was not consistent with other medical evidence. This attempt, however, is lacking in light of the numerous treatment notes in the record. One notation sheds little light on whether Hartsfield's opinion is consistent with the medical record as a whole.

As Magistrate Judge Deere observed in *Phillips v. Saul*, the new articulation requirements are designed to provide individuals with a better understanding of the Commissioner's determinations and provide sufficient rationale for a reviewing adjudicator or court. This purpose was frustrated when the ALJ failed to explain, with some specificity, why Hartsfield's opinion was not supported by relevant objective medical evidence and explanatory rationale, and why the opinion was or was not consistent with the medical evidence as a whole.

Based on the foregoing, a remand is necessary for reconsideration of Hartsfield's opinions utilizing the appropriate regulations. If the ALJ finds Hartsfield's opinions unpersuasive, the ALJ should explain why, fully addressing the supportability and consistency factors, as well as any other relevant factors.

The Commissioner's final decision is reversed, and the case is remanded. This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 20th day of July, 2021.

_____
UNITED STATES MAGISTRATE JUDGE